# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-00528-SCT

*OLLIE WINDMON AND ROBERT JOE*
*WINDMON*

*v.*

*STEPHANIE WARD MARSHALL AND*
*MISSISSIPPI FARM BUREAU INSURANCE*
*COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2003 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANITA M. STAMPS |
| ATTORNEYS FOR APPELLEE: | JUSTIN STRAUSS CLUCK |
| | KENT E. SMITH |
| | J. TUCKER MITCHELL |
| | ANDY LOWRY |
| | JAMES R. MOORE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED -04/13/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.   Ollie and Robert Windmon filed suit against Stephanie Ward Marshall and Mississippi

Farm Bureau Insurance Company (Farm Bureau) after Ollie Windmon was seriously injured

when her vehicle ran off of the highway and struck a tree.   Ollie Windmon claimed her

injuries were due to Marshall's negligent act of failing to properly yield.   Also, the

Windmons claimed Farm Bureau was liable for committing alleged acts of bad faith in the

investigation of their claim. The trial court ordered a bifurcation of this matter. In the first phase, the jury returned a verdict finding Windmon and Marshall equally at fault for the accident. During the second phase of the trial, after all of the evidence was presented, the trial court granted Farm Bureau's motion for a directed verdict. Feeling aggrieved, the Windmons subsequently filed this timely appeal.

**FACTS**

¶2. In June 2000, Stephanie Ward Marshall proceeded down her driveway in Hermanville, Mississippi, and attempted to enter Valley Moon Road. At the same instant Ollie Windmon was traveling toward Marshall on Valley Moon Road in her Ford Explorer. Prior to reaching the Marshall driveway, Windmon's Explorer veered off the road and struck a tree. After witnessing the crash, Marshall immediately rushed to Windmon's aid. At the scene Marshall assisted Windmon in exiting her vehicle. Also, because of the seriousness of the injuries Windmon sustained Marshall telephoned the hospital and requested an ambulance.

¶3. The facts are in dispute as to what actually caused the accident. Windmon claimed Marshall was attempting to pull out on the road, and to avoid a collision she swerved off of the road. Conversely, Marshall contended she stopped at the end of her driveway when Windmon ran off of the road in front of her for no apparent reason.

¶4. Within days after the accident, Windmon filed a loss notice claim with her insurer, Farm Bureau. Danita Lewis, Farm Bureau's adjuster, promptly paid medical and collision benefits, which she determined to be the only payable benefits allowable under policy.

2

However, Windmon claimed she was also entitled to recover uninsured motorist benefits. Initially, Farm Bureau refused uninsured motorist benefits because the accident appeared to involve only one vehicle. Farm Bureau investigated the matter and was unable to discover Marshall's identity and the role she may have played in the accident. Even Ollie Windmon herself failed to inform Farm Bureau of Marshall's involvement.

¶5. Several months after the accident, the Windmons' counsel informed Farm Bureau of Marshall's identity and alleged Marshall's negligence was a cause in fact of the accident. Notwithstanding Windmon's allegations, Farm Bureau adopted Marshall's version of events, which supported that Marshall was not the proximate cause of Windmon's injuries. To avoid a trial on the issue of uninsured motorist benefits, Farm Bureau presented an offer of settlement to the Windmons.

¶6. Subsequently, Ollie and Robert Windmon filed suit against both Marshall and Farm Bureau in the Circuit Court of Claiborne County on December 10, 2001. The Windmons alleged that Marshall, as an under or uninsured driver, through her negligent acts was the proximate cause of the automobile accident. Additionally, the complaint alleged that Farm Bureau failed to use good faith in handling the Windmons claim.

¶7. In August 2002, the Windmons filed an application for entry of default judgment and supporting affidavit. In December 2002, the Windmons filed an additional application for entry of default and supporting affidavit. Entry of default was subsequently entered and docketed by the circuit court clerk.

3

¶8.     In April 2003, Marshall filed a motion to set aside the clerk's entry of default and for leave of court to file responsive pleadings.  On May 6, 2003, a hearing was held before the trial court wherein the Windmons attempted to have a default judgment entered against Marshall.  However, the trial court set aside the entry of default and, at the Windmons' request, continued a trial on the merits until September 2003.  Additionally, the trial court determined it was proper to bifurcate the trial on issues of negligence and bad faith.

¶9.     On September 3, 2003, opening statements were given regarding Marshall's negligence, thus commencing the first phase of the bifurcated trial.  In the first phase of the trial the jury returned a unanimous verdict finding each Ollie Windmon and Stephanie Marshall fifty percent at fault for the accident.

¶10.     The second phase of the trial dealt with the Windmons allegations of Farm Bureau's bad faith in its investigation of the uninsured motorist claim.  During this phase Windmon called several witnesses to prove bad faith on behalf of Farm Bureau.  After Windmon presented her case and without presenting any witnesses of its own, Farm Bureau motioned the trial court for a directed verdict.  The trial court granted Farm Bureau a directed verdict and dismissed the second phase of the trial.

ANALYSIS

### I.  ENTRY OF DEFAULT

¶11.     "The decision to grant or set aside a default judgment is addressed to the sound discretion of the trial court." ***Tatum v. Barrentine***, 797 So. 2d 223, 227 (Miss. 2001) (citing

4

*Williams v. Kilgore*, 618 So. 2d 51, 55 (Miss. 1992)). The trial court's discretion must be exercised in accordance with the M.R.C.P. 55(c) and 60(b). *Tatum*, 797 So. 2d at 227(citing *Guar. Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 388 (Miss. 1987)). Further, "absent abuse of discretion, we will not disturb the rulings of the trial court on a default judgment." *Id*.

¶12. The Windmons contend the trial court erred and abused its discretion when it set aside the clerk's entry of default against Marshall without a hearing on the grounds for setting it aside. The Windmons call this Court's attention to the following subsection of Rule 55 of the Mississippi Rules of Civil Procedure:

> **(b) Judgment.** In all cases the party entitled to a judgment by default shall apply to the court therefor. If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing of such application; however, *judgment by default may be entered by the court on the day the case is set for trial without such three days' notice. If in order to enable the court to enter judgment or to carry it into effect it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearing with or without a jury, in the court's discretion, or order such references as it deems necessary and proper.*

(emphasis added).

¶13. However, this rule does not support the Windmons' argument. Moreover, the Windmons' argument effectively fails to distinguish between an entry of default and a default judgment. In the matter at hand, it is undisputed that the Windmons obtained an entry of default against Marshall prior to the hearing on May 6, 2003; however, the Windmons had not obtained a final judgment of default at that juncture. The trial court determined that its

5

discretion would best be served by setting aside the entry of default. M.R.C.P. 55(b) clearly enables that discretion and states "judgment by default may be entered by the court on the day the case is set for trial. . . ."

¶14.    Notwithstanding the Windmons' asseverations, we find M.R.C.P. 55(c) sets forth the appropriate rule for setting aside an entry of default.

> **(c) Setting Aside Default.** For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered , may likewise set it aside in accordance with Rule 60(b).

M.R.C.P. 55(c) draws a clear distinction between setting aside an entry of default and setting aside a judgment of default. This Court has previously held "there is a more liberal standard for setting aside a default than the standard for setting aside a default judgment." ***King v. Sigrest***, 641 So. 2d 1158, 1162 (Miss. 1994).  Therefore, in accordance with M.R.C.P. 55(c) the trial court was permitted to set aside the entry of default for good cause shown.  See ***Tatum***, 797 So. 2d at 226.

¶15.    "'[G]ood cause shown . . . requires the moving party to provide an explanation for the default or give reasons why vacation of the default entry would serve the interests of justice." ***Allstate Ins. Co. v. Green***, 794 So. 2d 170, 179 (Miss. 2001) (Waller, J., concurring) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2696 at 141-42; 143-49 (3d ed. 1998) (footnotes omitted)).

¶16.    Although the trial court does not expressly enumerate good cause for setting aside the entry of default, the record reflects that good cause existed.  On the scheduled trial date, May

6, 2003, Marshall and Farm Bureau appeared before the trial court and announced they were ready to proceed with trial. At the hearing, the Windmons urged the trial court to enter a judgment of default against Marshall on the issue of liability. The trial court noted that "the entry of default is no admission of liability. As a matter of fact, until a judgment is entered in court, there has not been an adjudication." Further, the trial stated "the very thing that's going to have to be established is liability on the part of Ms. Marshall before Farm Bureau will be responsible."

¶17. Therefore, even if the trial court had granted the default judgment, for the Windmons to proceed on their claim against Farm Bureau, the issue of Marshall's liability would still have had to be tried. It is apparent that in order to preserve the sanctity of justice, the trial court judiciously allowed Marshall the opportunity to defend herself in court. The Windmons were not prejudiced by undue delay, as Marshall was present and ready to proceed at the initial hearing on May 6, 2003. Therefore, we find the trial court's decision setting aside the entry of default was supported by good cause because it erred on the side of caution and served the interests of justice.

¶18. The Windmons assert that the trial court did not have a legal basis for setting aside the entry of default. For support the Windmons cite this Court's prior precedent in an attempt to formulate an analogy with the present set of facts. However, in each of the cases cited by

the Windmons, a default judgment had been already entered, not a mere entry of default as in the case at hand.[1] Thus, these cases are factually distinguished from the case at bar.

¶19. This Court finds the trial court did not abuse its discretion in setting aside the entry of default. Thus, this issue is without merit.

## II. DIRECTED VERDICT

¶20. This Court has repeatedly stated the standard of review for determining whether a motion for a directed verdict should be granted. The standard of review for both a peremptory instruction and directed verdict is as follows:

> [T]his Court conducts a de novo review of motions for directed verdict . . . . If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted. Additionally, this Court has held that a trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree.

*Entergy Mississippi, Inc. v. Bolden*, 854 So. 2d 1051, 1055 (Miss. 2003) (internal citations omitted). The Windmons argue that the trial court erred by not adhering to the correct legal standard of review in this case because the evidence presented did in fact create a question upon which reasonable jurors could disagree.

---

[1] See *Pointer v. Huffman*, 509 So. 2d 870 (Miss. 1987); *Vining v. Mississippi State Bar Ass'n.*, 508 So. 2d 1047 (Miss. 1987); *Bryant v. Walters*, 493 So. 2d 933 (Miss. 1986); *Donaldson v. Pontotoc County Welfare Dept.*, 445 So. 2d 1377 (Miss. 1984); *Guar. Nat'l*, 501 So. 2d at 377.

### A.  Failure to Investigate

¶21.   The Windmons argue they established bad faith due to Farm Bureau's failure to investigate the accident.  Thus, the Windmons maintain the trial court erred in granting a directed verdict and not submitting this matter to the jury.

¶22.   In *Murphree v. Federal Ins. Co.*, 707 So. 2d 523,  529 (Miss. 1997), this Court stated that "[i]f there is a finding that there was a reasonable arguable basis to deny the claim then the [appellant] is not entitled to have the jury consider any bad faith award against the insurance company."  Further, the plaintiff bears a heavy burden in demonstrating to the trial court that there was no reasonably arguable basis for denying the claim.  *Blue Cross & Blue Shield v. Campbell*, 466 So. 2d 833, 844 (Miss. 1984).

¶23.   Danita Lewis testified that some accidents require more investigation than others.  Lewis revealed that an accident involving two or more vehicles is a disputed accident usually requiring a scene investigation.  However, Lewis stated that this was an apparent one-car accident and even though the police report mentioned someone may have pulled out in front of Ollie Windmon it failed to identify another driver.  Also, the report's diagram supported the notion that only a one-car accident occurred.  Farm Bureau apparently was unaware that Marshall was the driver of the other vehicle until seven months post accident when the Windmons revealed her identity.  One month after the accident Lewis took a statement from Ollie Windmon.  During that statement Lewis inquired if Windmon knew the name of the driver of the other vehicle, and Windmon responded in the negative.  Also, Lewis stated that

9

in her attempts to locate the identity of the supposed second driver, she knocked on the door of the mobile home across the street from where the accident occurred to no avail. Further, Lewis explained that additional door-to-door canvassing would not have been a reasonable investigatory tactic due to the rural nature of and limited number of houses in the area.

¶24. "[I]f the insurance company cannot give its insured a valid reason for denying the claim, it has a final duty to promptly honor it." *Bankers Life & Cas. Co. v. Crenshaw*, 483 So. 2d at 254, 276 (Miss. 1985). We find Farm Bureau's conduct was not bad faith because there was a valid and arguable reason to deny the uninsured motorist claim. An arguable reason has been defined by this Court as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to [the] heightened level of an independent tort." *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992)(quoting *Pioneer Life Ins. Co. of Illinois v. Moss*, 513 So. 2d So. 2d 927, 930 (Miss. 1987)). Farm Bureau's actions in the case at bar certainly do not rise to the level of an independent tort. Thus, Farm Bureau's reason for denying the Windmons' uninsured motorist claim was arguable at a minimum.

¶25. The facts demonstrate Farm Bureau initially denied the uninsured motorist claim because after reasonable efforts Marshall's identity had not been discovered. This is an arguable reason. Further, this Court has held:

> [T]he plaintiff's burden in proving a claim for bad faith refusal goes beyond proving mere negligence in performing the investigation. The level of negligence in conducting the investigation must be such that a proper

10

investigation by the insurer would easily adduce evidence showing its defenses to be without merit.

*Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 534 (Miss. 2003)(citing *Murphree*, 707 So. 2d at 531). Lewis may not have performed her adjusting duties in the ideal fashion. However, the record demonstrates at most mere negligence on Lewis' part. Thus, the Windmons did not meet their burden of proving their claim.

¶26. In addition, Farm Bureau correctly points out that even had they been able to quickly identify Marshall after the accident, they would have adopted Marshall's account of disputed liability, which still justifies denial of the uninsured motorist claim. This contention was strengthened when the jury returned a verdict apportioning fault equally between Marshall and Windmon. This is also an arguable reason for denying the claim. Therefore, this Court finds that a more aggressive investigation by Farm Bureau would not have yielded evidence showing its defenses to be without merit.

### B. Delay

¶27. Next, the Windmons argue that Farm Bureau was guilty of bad faith delay. However, we are unclear as to the exact delay of which the Windmons are complaining. The Windmons apparently attempt a continuing garbled argument regarding Farm Bureau's negligent investigation. However, it is abundantly clear the Windmons are in disagreement with the trial court's grant of a directed verdict.

¶28. The Windmons assert this matter should have been submitted to the jury for a determination of punitive damages. They allege that in *Caldwell v. Alfa Ins. Co.*, 686 So.

11

2d 1092, 1097 (Miss. 1996), this Court allowed a punitive damage instruction to the jury as the result of a delay in payment of a claim. However, after reviewing *Caldwell*, this Court disagrees. In *Caldwell*, this Court affirmed the trial court's grant of summary judgment in favor of Alfa Insurance Company on the issue of bad faith. *Caldwell* held that Alfa Insurance Company's explanation of delaying payment to Caldwell was reasonable, not egregious. *Id*. at 1093. Further, this Court found that Alfa 's conduct was at most simple negligence, and punitive damages were not proper. *Id*. Thus, *Caldwell* actually favors dismissal of bad faith claims and punitive damages when just simple negligence is at hand.

¶29.     The Windmons also attempt to draw a comparison between *Travelers Indem. Co. v. Wetherbee*, 368 So. 2d 829 (Miss. 1979), and the case at bar. "In *Travelers*, this Court affirmed a punitive damage instruction where the insurer withheld payment for a period of eight months, despite being warned that the insured was suffering economically." *Caldwell*, 686 So. 2d at 1098. Further, in *Travelers*, Travelers Indemnity withheld payment from the Wetherbee's attempting to force settlement at a lower price. This Court concluded that Traveler's intentional withholding of coverage was a gross breach, equivalent to an independent tort. *Travelers*, 368 So. 2d at 835. Hence *Travelers* was not an instance of mere delay. Rather *Travelers* was an instance of an egregious attempt by an insurance company to bully an insured into a cheap settlement. Nevertheless, the factors in *Travelers* are not present in the case at bar. Moreover, Farm Bureau's conduct does not rise to the level of an independent tort.

12

¶30. There is no evidence in the record suggesting that Farm Bureau delayed any of the Windmons' claims in bad faith. Farm Bureau's adjuster, Danita Lewis, was at most simply negligent in her handling of certain aspects of the Windmons' claims. The Windmons call this Court's attention to Lewis being reprimanded in a memorandum by her supervisor for poor claims handling. However, Lewis' supervisor testified that the memorandum regarding Lewis' efforts to garner the Windmons additional money on their collision claim. In response, Farm Bureau insists the Windmons are presenting evidence which demonstrates Lewis actually acted in good faith by "going the extra mile" during the claim process.

¶31. This Court has failed to ascertain a single instance of bad faith on behalf of Farm Bureau in this case. The Windmons did not prove by a preponderance of the evidence that Farm Bureau acted with malice or gross or reckless disregard for the rights of others. *See Caldwell*, 686 So. 2d at 1095. We find Farm Bureau's conduct was at most simple negligence. Therefore, Farm Bureau's conduct does not rise to a level requiring punitive damages to be considered. *Id*. at 1093.

### C. Consequential/Extra-Contractual Damages

¶32. Finally, the Windmons assert that even if they cannot show bad faith on behalf of Farm Bureau for an award of punitive damages, they may still be entitled to consequential

or extra-contractual damages[2] for lack of a reasonably arguable basis. However, as we previously noted, Farm Bureau had a reasonably arguable basis for denying the claim.

¶33. In support of their assertion, the Windmons call attention this Court's opinion in ***Blue Cross & Blue Shield of Mississippi, Inc. v. Maas***, 516 So. 2d 495 (Miss. 1987). In ***Maas***, Blue Cross insisted they committed an error due to a mere oversight, and punitive damages were not proper. This Court disagreed and upheld the award of punitive damages after weighing facts such as:

> (6) Maas never received an answer from Blue Cross, following his claim's denial, though assured of an investigation and response, (7) Blue Cross denied a doctor's claim on Maas, related to the surgery, approximately three weeks after he had filed suit; significantly, the denial occurred after Blue Cross' investigation had determined that the insurer wrongfully terminated coverage, and (8) Blue Cross failed to remit payment until March 11, 1985, approximately six weeks after the investigation had found that the insurer improperly denied the original claim.

*Id*. at 497-98.

¶34. The facts in this case bear no relation to the conduct of the insurer in ***Maas***. Farm Bureau remained in contact with the Windmons and never mistakenly denied their uninsured motorist claim. Once Marshall's identity was revealed, Farm Bureau adopted her account of the accident. Moreover, because Farm Bureau then contended the accident was due to Ollie Windmon's negligence, denial of the claim was proper. Thus, ***Maas*** is factually distinguished from the case at hand.

---

[2]Extra-contractual damages include reasonable attorney fees, court costs, and other economic losses.

¶35. Further, the Windmons apparently rely on Justice Roberston's concurring opinion in *Maas*. *Id*. at 498. In his concurrence, Justice Robertson opines that the parties and trial court should have litigated the matter for ordinary tort damages. Nonetheless, Justice Robertson's rationale would not apply in the case at bar because Farm Bureau's conduct does not rise to the level of an independent tort. Therefore, a trial on ordinary damages would be improper on this occasion.

¶36. In conclusion, the trial court allowed the Windmons the opportunity to present their case to the jury during this second phase of the bifurcated trial. At the close of the Windmons' case in chief Farm Bureau did not call a single witness, but instead motioned the trial for a directed verdict in their favor.[3] The trial court subsequently granted Farm Bureau's motion and stated "the court is just convinced beyond any doubt that there simply cannot be any fair-minded juror who could come to any conclusion but the fact that there has been no bad faith exercised in this particular case."

¶37. We find the trial court was well versed on the applicable standard of review. Moreover, for the reasons stated above, the trial court was correct in finding that no

---

[3] Windmon avers in her brief that Farm Bureau's motion for a directed verdict was actually a motion for peremptory instruction. We admit there is little or no difference between a peremptory instruction and a directed verdict in this case. Moreover, both are governed by the same standard of review, see supra. However, Farm Bureau presented the motion at trial as a motion for a directed verdict, and the trial court granted what it deemed a directed verdict. Thus, this Court will address whether or not a directed verdict was proper in this instance.

reasonable juror could have found Farm Bureau in bad faith. Therefore, the directed verdict was proper. Thus, this issue is without merit.

### III. PLAINTIFFS' EXPERTS

¶38. "The admission of expert testimony is addressed to the sound discretion of the trial judge. Unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, that decision will stand." *Roberts v. Grafe Auto Co., Inc.*, 701 So. 2d 1093, 1098 (Miss. 1997). "For a case to be reversed on the erroneous admission or exclusion of evidence, the error must result in prejudice and harm or adversely affect a substantial right of a party." *Busick v. St. John*, 856 So. 2d 304, 319 (Miss. 2003)(citing *Terrain Enter., Inc. v. Mockbee*, 654 So. 2d 1122, 1131 (Miss. 1995); *Hansen v. State*, 592 So. 2d 114 (Miss. 1991)).

¶39. The Windmons insist they were prejudiced by the trial court's dismissal of their witnesses regarding insurance and hedonic damages. At the May 6, 2003 hearing the following pertinent communications took place:

> COUNSEL FOR WINDMONS: I think we would be prejudiced by the fact that we haven't been able to do full discovery as it pertains to Ms. Marshall.
> TRIAL COURT: So you want me to continue the Ms. Marshall portion of the case and try the Farm Bureau portion of the case?
> COUNSEL FOR WINDMONS: Well, we could do that if the Court - - but seems like that might be out of order.
> . . . .
> TRIAL COURT: [I]t doesn't make any difference whether you continue Ms. Marshall's portion of the case or not as to Farm Bureau. So you're ready to go with Farm Bureau?
> COUNSEL FOR WINDMONS: We're ready to go, Your Honor, based on the Court's ruling.

16

TRIAL COURT: Well, I mean, I don't want to prejudice you.

COUNSEL FOR WINDMONS: But if you make us try the case in this posture, Your Honor, we'll be prejudiced, but we're prepared to do whatever the Court wants us to do.

TRIAL COURT: What do you suggest? How would you not be prejudiced?

COUNSEL FOR WINDMONS: If we have a continuance while we develop the liability aspects of the case, Your Honor. But I think the Court has made its ruling and I'm ready to proceed.

. . . .

TRIAL COURT: . . . [I]t seems like we're continuing the case based on something that just don't make any difference, and I do not see any prejudice, but if you do, I'm inclined to grant your continuance just because you feel like you're prejudiced. I don't want to do that to you.

COUNSEL FOR WINDMONS: In light of the - -

TRIAL COURT: I want to be fair to everybody in this courtroom, I want to be fair to you, I want to be fair to [Farm Bureau's counsel], I want to be fair to Farm Bureau, I want to be fair to everybody, and I don't see how anybody is prejudiced, but if you think you are, I'm inclined to grant your request.

¶40. At the May 6 hearing the Windmons were anticipating the trial court would grant a default judgment in their favor against Marshall. However, they were ready to proceed on the bad faith claim against Farm Bureau. When the trial court attempted to proceed to trial on the issue of Marshall's liability, the Windmons asserted they would be prejudiced in that aspect. Hence, the trial court judiciously granted a continuance solely on the issue of liability in an attempt to appease the Windmons' concerns.

¶41. On July 3, 2003, before the trial was continued, the Windmons designated Stan Smith, Ph.D., as an economist expert, and Donald Dinsmore, J.D., as an insurance expert. Farm Bureau filed a motion in limine to exclude the testimony of these experts. Subsequently, the trial court disallowed these witnesses based on the premise that the continuance was granted to allow the Windmons the opportunity to further prepare a case on the liability aspect only,

17

not to strengthen their case against Farm Bureau. Because the Windmons were ready to proceed against Farm Bureau before the continuance, allowing them additional time to prepare would have prejudiced Farm Bureau. The trial court stated:

> This Court, relying on plaintiffs' adamant statements on May 6, that they were ready and willing to try the damages issues, ruled not to allow testimony from these two witnesses. Since the trial was continued due to plaintiffs being unprepared to try the issue of liability on May 6, this Court felt that to have allowed them additional time to prepare for the phases of the case which they represented were ready to be tried on May 6, would have been a miscarriage of justice. Accordingly, this Court ruled not to allow the testimony of these two witnesses.

¶42. The Windmons maintain that Farm Bureau was afforded more than ample time to prepare, thus Farm Bureau would have suffered no prejudice by admittance of the testimony of their experts. In support of this contention the Windmons cite this Court's precedent.[4] Nevertheless, Farm Bureau correctly notes the entirety of the Windmons' supporting authority, contrary to the case at bar, are instances where the trial court chose to allow expert testimony.

¶43. It is clear to us the trial court did not allow a continuance for the purpose of bestowing an unfair advantage upon the Windmons. Further, the trial court was very insistent in its quest to be fair. This Court will accept no less; "[o]ur trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the

---

[4] ***Mississippi Valley Gas Co. v. Estate of Walker***, 725 So. 2d 139 (Miss. 1998); ***Eastover Bank for Sav. v. Hall***, 587 So. 2d 266 (Miss. 1991); ***Motorola Commc'ns & Elec. v. Wilkerson***, 555 So. 2d 713 (Miss. 1989).

provisions of these orders, they should be prepared to do so at their own peril." ***Bowie v.***

***Montfort Jones Mem'l Hosp.***, 861 So. 2d 1037, 1042 (Miss. 2003).

¶44.   Prejudice certainly would have occurred had the trial court allowed the experts at issue to testify.  It is apparent the trial court barred the experts' testimony in the interests of justice.  Therefore, this Court finds the trial court did not abuse its discretion.  Thus, this issue is without merit.

### IV.  J.N.O.V.

¶45.   A judgment notwithstanding the verdict is subject the same standard of review as a peremptory instruction or directed verdict, see supra.  That standard is "[i]f the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render." ***Illinois Cent. R.R. Co. v. Hawkins***, 830 So. 2d 1162, 1169 (Miss. 2002).

¶46.   The Windmons simply fail to set forth a new argument or any precedent for this issue.  Instead, the Windmons aver that they are "re-adopting" the foregoing arguments submitted on appeal.  This Court has already determined the trial court's grant of a directed verdict was proper because no reasonable juror could have reached a contrary verdict, see supra.  Because the same standard governs a J.N.O.V., we find the trial court properly denied the Windmons' motion for J.N.O.V.  Thus, this issue is without merit.

## CONCLUSION

¶47.  For these reasons, we affirm the judgment of the trial court.

¶48.  **AFFIRMED.**

**WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**