EMILIO M. GARZA, Circuit Judge,
concurring in part[1] and dissenting in part:
Because the majority opinion misapplies Mississippi law and omits significant facts of this case, I am compelled to dissent.
The majority’s fundamental error lies in its failure to recognize, much less address, the central issue in this case: James had to establish as a material issue of fact that State Farm acted with actual malice or gross negligence in delaying payment. Caldwell v. Alfa Ins. Co., 686 So.2d 1092, 1095-96 (Miss.1996). Stated differently, the majority incorrectly holds that simple negligence is sufficient to support James’s bad faith claim. Windmon v. Marshall, 926 So.2d 867, 873 (Miss.2006). Similarly, the majority errs in holding that James raised a genuine issue of fact as to whether State Farm had an arguable or legitimate basis for the delay — the record clearly reflects that State Farm was investigating the true cause of James’s injury before making payment. Finally, the majority’s use of arbitrary time periods is concerning and may create significant confusion about insurers’ legal obligations to investigate claims and administer payments.
I
This is an appeal from a grant of summary judgment on James’s claim that State Farm acted in bad faith when it delayed payment of her uninsured motorist claim. James sought punitive damages based on this alleged independent tort under Mississippi law. After discovery, State Farm moved for summary judgment, and James opposed the motion, seeking to have the case proceed to trial.[2]
Summary judgment is appropriate when the movant shows that there is “no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). To do this, the movant may “demonstrate that the evidence in the record insufficiently supports an essential element of the opponent’s claim.... ” Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 190 (5th Cir.1991) (citation omitted). Nonetheless, the non-mov-ant can respond by producing “evidence sufficient to sustain a finding in [its] favor” on an issue for which the non-movant would bear the burden of proof at trial. Kovacic v. Villarreal, 628 F.3d 209, 212 (5th Cir.2010) (citations and quotations omitted).[3]
*79 To win on a bad faith claim and recover punitive damages under Mississippi law, the plaintiff must establish “that the defendant ... acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.” Miss. Code Ann. § ll-l-65(l)(a). Additionally, the plaintiff must show that the insurer had no arguable or legitimate reason for denying or delaying payment on the claim. Caldwell, 686 So.2d at 1096. An arguable reason is “nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to [the] heightened level of an independent tort.” Id. (quoting Universal Life Ins. Co. v. Veasley, 610 So.2d 290, 293 (Miss.1992)) (emphasis added). Where the record at most demonstrates “mere negligence,” an insurer’s actions do not rise to the level of an independent tort. Windmon, 926 So.2d at 873.
Based on the governing law and the record evidence, the district court determined that James could not establish that State Farm acted with actual- malice or gross negligence. It also found that -State Farm had an arguable or legitimate reason for delaying payment — namely, its ongoing investigation into the cause of James’s injuries. See Faith James v. State Farm Mut. Auto. Ins. Co., No. 4:07-cv-137, 2011 WL 1743421, at *9 (S.D.Miss. May 6, 2011) [hereinafter District Court Opinion]. As a result, the court held that James could not prevail on her bad faith claim and, accordingly, that State Farm was entitled to summary judgment. Id. at *9-10.[4]
II
The majority reverses without even considering whether James can show that State Farm acted with “actual malice” or “gross negligence.” See Miss.Code Ann. § 11 — 1—65(l)(a).[5] Today’s holding addresses only the existence of a legitimate or arguable reason for. the delay in payment. Ante, at 77.[6] But, the record does *80 not show that State Farm acted with malice or gross negligence. During the delay period, because the etiology of James’s injury was legitimately in doubt, State Farm made numerous attempts to obtain medical records from James, her doctors, and her attorney. It was not until the necessary records were produced that State Farm could complete its investigation and make a final determination on James’s claim. Even under the assumption that State Farm’s investigation lacked diligence during three periods of time, see infra Part III, the record at most demonstrates “mere negligence,” which is insufficient to support a bad faith claim. Windmon, 926 So.2d at 873; see also Caldwell, 686 So.2d at 1099. Thus, the district court properly granted summary judgment because the facts did not present a genuine issue about “whether State Farm lacked a legitimate or arguable reason for the delay and [whether] such delay amounted to a willful or malicious wrong.” District Court Opinion, at *9 (emphasis added).
In an attempt to justify this departure from Mississippi law, the majority claims that “[njeither party asserted that State Farm’s delay was due to negligence.” Ante, at 77 n. 11. This statement is misleading, as simple negligence is not at issue in this case. Rather, the question is whether the record can support a finding that the delay reflected malice or gross negligence amounting to bad faith; State Farm contends that it cannot. Thus, the issue of bad faith is squarely before us on appeal, as it was before the district court. Even if State Farm did not raise this issue, summary judgment requires a court to determine whether the moving party is entitled to judgment as a matter of law[7]— we must decide whether the record could show that State Farm committed an independent tort.[8]
Accordingly, I would affirm the district court’s grant of summary judgment on James’s bad faith claim.[9]
*81 III
I further disagree with the majority’s holding that James raised a fact issue concerning whether State Farm had an arguable or legitimate basis for delaying payment. Ante, at 77.
A. July 20, 2006-October 4, 2006[10]
The majority holds that James raised a fact issue regarding whether State Farm had a legitimate basis for delay from July 20, 2006 until October 4, 2006 because, despite State Farm’s determination that James’s symptoms might be due to preexisting injuries, State Farm did not “act on this concern” until October 5, 2006, when Powell wrote to James asking her to call to discuss her claim. Ante, at 73.
I disagree. State Farm’s activity log indicates that Powell made multiple attempts to reach James during this period, and that Powell and James had at least three conversations. R. USCA5 1081-82. On July 18, 2006, just two days prior to the start of this period, Powell sent medical record requests to six different facilities. R. USCA5 1083. When Powell noted on July 20, 2006, that the medical records from Wayne General indicated degenerative changes, State Farm could not yet make a conclusive determination about James’s symptoms because other record requests were still outstanding. R. USCA5 1077, 1083. Moreover, during the next several weeks, Powell continued to contact healthcare providers, gather medical records, and pay invoices for records. R. USCA5 1080-82. In light of the record evidence, James cannot show that there is a genuine dispute about State Farm’s legitimate basis for delay during this period.
B. January 17, 2007-July 11, 2007
The majority holds that James raised a fact issue as to whether State Farm had a legitimate basis for delay from January 17, 2007 through July 11, 2007, because even though State Farm did not yet have the requisite medical records to evaluate James’s claim, the insurer did not specifically communicate “the need for prior medical records” to James or her attorney, Hamilton. Ante,, at 74-75. The majority explains, “[bjecause the record contains no evidence that State Farm informed James’s lawyer that it was concerned about the etiology of James’s injuries, we decline to attribute the delay to James.” Ante, at 74-75.
Again, the majority misreads the record. First, the majority overlooks the fact that State Farm had previously informed James of the need for the medical documents and the reasons for the request. State Farm requested James’s medical records from (1) James on October 5, 2006 and October 27, 2006(2) James’s doctor, Dr. Staggs, on October 27, 2006 and November 17, 2006 and (3) Hamilton on December 11, 2006, May 3, 2007, and June 13, 2007. R. USCA5 1060, 1292, 1297, 1302, Exh. 63-27, 63-28, 63-30 (sealed).[11] Thus, *82 inaction on State Farm’s part did not cause the delay. Moreover, State Farm needed time to resolve a conflict between, on the one hand, Dr. Staggs’s report indicating that the injuries were new, and on the other hand, notes from an office visit, radiology reports, and James’s own report indicating that the fractures were pre-ex-isting. This conflict was not resolved — if at all — until March 28, 2008 when Dr. Staggs clarified by fax that his opinion was that James’s injuries were new.[12] R. USCA5 1305. Thus, on this record, James cannot show a genuine dispute about State Farm’s legitimate basis for delaying payment during this period.
C. March 29, 2008-July 29, 2008
The majority holds that James met her burden to raise a fact issue regarding whether State Farm had an arguable basis for delaying payment from March 29, 2008, the day after State Farm received the clarifying fax from Dr. Staggs, until July 29, 2008, when State Farm actually tendered payment on James’s uninsured motorist claim. Ante, at 76-77.
Although Dr. Staggs’s fax clarified his opinion on James’s injuries, the fax conflicted with radiology reports,[13] and State Farm never received some of James’s pri- or medical information, initially requested in October 2006.[14] Even assuming Dr. Staggs’s fax provided sufficient information to clarify the inconsistencies, State Farm needed at least some reasonable amount of time to review the new information contained in the fax. The bad faith clock does not begin to tick “as soon as there is any information available that could subsequently be considered as sufficient evidence to support the payment of [the claim].” Pilate v. Am. Federated Ins. Co., 865 So.2d 387, 399 (Miss.Ct.App.2004) (holding that payment five months after receiving medical records sufficient to make disability determination was not bad *83 faith); see also Caldwell, 686 So.2d at 1098 (affirming a grant of summary judgment to insurer on a bad faith claim even though payment came six weeks after completing investigation). As the district court correctly observed, and the majority does not appreciate, “[t]he standard is not whether State Farm could have investigated the claim in a way that might have resulted in prompter payment of benefits; instead, the standard is whether State Farm lacked a legitimate or arguable reason for the delay....” District Court Opinion, at *9. Again, James cannot establish a genuine dispute about State Farm’s legitimate basis for delaying payment.
IY
The majority’s use of arbitrary time periods for its bad faith analysis is concerning. This approach brings judicial scrutiny to the level of an insurer’s daily activities and may cause significant uncertainty about insurers’ claims investigation obligations under the law.
The majority’s approach, as I understand it, uses time periods only to facilitate its analysis of the record. See ante, at 72 (“We analyze the entire investigation in discrete time periods to better assess the claims.”). While the majority finds , that James established a fact issue during three of the discrete time periods it created, its ultimate holding is based on “the totality of the circumstances.” See id. Moreover, because the date ranges are only the majority’s analytical tools, they do not bind the district court on remand.
While a periodized approach might be a useful tool for analyzing a lengthy factual record, the majority’s drawing legally significant conclusions about each of the periods it created is troubling. First, even James herself did not use this periodized approach in her briefs before this court or the district court. Second, it is not clear that the majority’s approach reflects the actual practice of Mississippi courts.[15] Third, the majority’s analysis leads to arbitrary conclusions about inactivity: In Part II.C.3, the majority starts one analytical period (July 20,- 2006-October 4, 2006) immediately after Powell sent letters, clearly part of an active investigation, on July 18, 2006. In short, a periodized approach has the strong potential to blind a reviewing court to the factual forest by focusing on isolated trees. Because this approach is not the clear practice of the Mississippi courts and muddles the legal standards for insurance claims investigation, I would have evaluated State Farm’s actions throughout the course of its investigation without creating discrete time periods.
The majority’s arbitrary periodization further suggests that an insurer must take constant, visible actions to protect itself against allegations of bad-faith delays, whether or not those actions are meaningful. Otherwise, a reviewing court might simply choose to begin an analytical period on a day when its claims investigator turned his or her attention to another matter. The majority’s analysis thus has the potential to wreak havoc on insurers’ claims processing and raise the cost of coverage, all in the name of requiring in *84 surers to avoid even a superficial appearance of bad faith.
y
Respectfully, I remain in dissent.

. I agree with the majority that we should affirm the district court to the extent that it granted summary judgment on James’s breach of contract claim.

. James did not cross-move for summary judgment.

. The majority muddles basic summary judgment procedure. The opinion states: "Because State Farm was not actively investigating James’s claim during this time period, we hold that there is a question of fact as to whether James can satisfy her burden of demonstrating by a preponderance of the evidence that State Farm did not have an arguable reason for this- eleven-week period of delay.” Ante, at 73. To defeat summary judgment, James’s burden is simply to dem *79 onstrate that there is a genuine dispute of fact about whether State Farm had an arguable or legitimate basis for the delay. Next, the majority explains that "[b]ecause State Farm was not conducting any investigation during this time period, we conclude that it was not acting in accordance with its duty under Mississippi law ‘to perform a prompt and adequate investigation.' ” Ante, at 73 (citation omitted). While the next paragraph returns to the summary judgment posture, this language reads as a conclusion of law— not a determination that James has raised a fact issue about whether State Farm was acting in accord with its duty.

.Like the district court, both James and State Farm recognize that a bad faith claim requires proof of actual malice or gross negligence under Mississippi law. See, e.g., Appellant Br. at 18 ("[A] plaintiff must show that the insurer lacked an arguable or legitimate basis for denying a claim, or that the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.”) (internal citations and quotations omitted); Appellee Br. at 26 (‘‘[T]here is no evidence or charge herein that State Farm has acted with actual malice in this case.”).

. Today’s opinion explicitly severs the question of whether State Farm- acted -With actual malice from that of whether State Farm had an arguable or legitimate basis for its delay. See ante, at - 71 n. 6 (addressing only the "threshold issue” of State Farm’s arguable or legitimate reason for delay). The majority refuses to "express an opinion” about whether the record demonstrates more than ordinary negligence, that is, whether the record shows the conduct necessary for bad faith. See ante, at 77 n. 11. Mississippi courts, however, consider both aspects at the same time. See Windmon, 926 So.2d at 872.

. The only definitive pronouncement from, today’s opinion is the majority's specific holding that "there is some evidence that State Farm lacked an arguable or legitimate basis for delay.” Ante, at 77. While the opinion opines that James is "entitled to present her *80 claim to a finder of fact on remand,” id., and suggests that she will do so, id. at 77 n. 11, nothing in the majority opinion necessarily commands that the case proceed to trial. The district court retains its discretion to hear additional motions in its management of the case. Should the court continue to find that there is insufficient record evidence that State Farm's conduct rises to the level of an independent tort, it may grant summary judgment on this basis. Or, should the case reach a jury, the district court retains power under Rule 50.

. See 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2725 (3d ed.2013) ("Once it is determined that there is no genuine issue as to any material fact and that a party is entitled to the benefit of a judgment as a matter of law, judgment should be entered even though the legal principles relied upon by the court may differ from those that have been urged upon it by the litigants.”).

. On remand, the majority has tasked the district court with considering "in the first instance whether this delay was negligent or the result of 'actual malice...” Ante, at 77. However, the district court has already done this. In its summaiy judgment order the court stated that it "cannot conclude that State Farm’s conduct rose to the level of gross negligence or an independent, intentional tort.” See District Court Opinion, at *9. Considering whether the record shows malice or gross negligence is this court’s task on de novo review of the district court’s order. The majority errs in refusing this responsibility.

.Separately, as the majority correctly notes, "Mississippi law does not permit parties to recover punitive damages unless they first prove that they are entitled to compensatory damages.’.' Ante, at 70 n. 5 (quoting Broussard v. State Farm Fire & Cas. Co., 523 F.3d 618, 628 (5th Cir.2008)). Thus, to prevail on remand James must demonstrate that she suffered some compensable damage because of the delay. Given that State Farm ultimately paid James’s claim, it is not clear what damages she can demonstrate, and the majority fails to provide any meaningful guidance. This is an open issue for the district court on remand.

. While I would not use arbitrary time periods to analyze the summary judgment record for the reasons set forth in Part IV, infra, I use the majority’s own framework to address their errors.

. Letters from Powell to James and Dr. Staggs clearly state the need for prior medical records in order to fully assess James’s claim and determine the etiology of James’s injury. An October 5, 2006 letter to James stated: "If I can obtain some of your prior records, I may then be in a position to evaluate your uninsured motorist claim." R. USCA5 1060. The follow-up letter on October 27, 2006 was even more specific: "I am merely trying to determine if you had to treat for any of these pre-existing conditions prior to the accident or if they became symptomatic following the loss. I do not know if I will be able to properly evaluate your claim without that information, but I am waiting on some informa *82 tion from Dr. Staggs at this time.” R. USCA5 1297. A letter to Dr. Staggs, sent first on October 27, 2006 and again on November 17, 2006 explained: "I am trying to determine if this was caused by the accident of February 3, 2006, since the initial radiology report indicated that this injury was probably old. If your notes do not comment on what injuries were caused in this accident or how the accident may have affected any pre-existing injuries, please advise via letter.” R. USCA5 1292, 1302. Hamilton's December 7, 2006 letter stated he would "forward to [State Farm] copies of all medical bills and medical records when [his] clients have completed treatment.” R. Exh. 63-26 (sealed). Powell acknowledged receipt of Hamilton’s letter. And, in accordance with the practices Powell and Hamilton had established over their 30 years of prior dealings, as well as Hamilton’s December 7, 2006 letter, Powell waited for Hamilton to send a medical records package. Powell Dep., R. Exh. 63-7 at 53 (sealed). In State Farm’s activity log, Powell noted again on January 22, 2007 that Hamilton would send all material when he had it. R. USCA5 1077. Powell followed up with Hamilton on May 3, 2007 and June 13, 2007, reminding him to forward James’s medical records when they became available, but Hamilton did not respond. R. Exh. 63-28, 63-30 (sealed), 1076.

. Dr. Staggs's clarifying fax consisted only of the words, "According to my 7/6/06 notes those fractures were recent at that time.” R. USCA5 1305.

. In his deposition, Dr. Staggs stated that (1) the radiology reports were inconsistent with his finding that the injuries were new,(2) the CT scan showed evidence of a preexisting injury, and (3) there were inconsistencies in James's medical records as to the origin of her injury. R. USCA5 1179-80.

. Powell logged a package of medical records as received from Hamilton on August 31, 2007. R. USCA5 1073. Powell wrote to Hamilton on September 25, 2007, requesting prior medical records from Dr. Byrd, Dr. Green, and Dr. Daggett, but Hamilton never responded to this request. R. Exh. 63-36 (sealed).

. The majority cites only one decision in support of this practice, and it is from a court of appeals, not the Supreme Court. See Pilate v. Am. Federated Ins. Co., 865 So.2d 387 (Miss.Ct.App.2004). A search of published Mississippi cases did not show others applying such a segmented approach, and it certainly did not reveal a trend among the courts. The district court’s more holistic approach of evaluating whether State Farm's actions throughout thé course of the investigation constituted bad faith seems more in line with precedent.